**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**September 23, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ADAM HOLLEY,

    Plaintiff - Appellant,

v.

BRIAN BINGMAN, in his official
capacity, Oklahoma Secretary of State;
JOSH COCKROFT, in his official
capacity, Oklahoma Secretary of State;
OKLAHOMA SECRETARY OF STATE;
PAUL ZIRIAX, in his official capacity,
Secretary for the Oklahoma State Election
Board; OKLAHOMA STATE ELECTION
BOARD,

    Defendants - Appellees.

No. 24-6237
(D.C. No. 5:24-CV-00656-R)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **BACHARACH**, and **EID**, Circuit Judges.

_____

Adam Holley appeals the district court's dismissal of his pro se complaint for

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  We have

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

jurisdiction under 28 U.S.C. § 1291 and affirm the district court's judgment for the reasons explained below.

I

Holley filed a third amended complaint under 42 U.S.C. § 1983, naming as defendants the Oklahoma Secretary of State, the Oklahoma State Election Board, and three state officials in their official capacities. He alleged that Oklahoma's electoral primary system established under Okla. Stat. tit. 26, §§ 1-102 and 1-103 unlawfully excludes candidates from the electoral process and that he was excluded from Oklahoma's 2022 senatorial election. Based on these allegations, he claimed violations of the First, Ninth, Tenth, and Fourteenth Amendments and sought monetary, declaratory, and injunctive relief.

Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6), and the district court granted the motions, ruling Holley failed to state a plausible claim for relief.

II

We review de novo the district court's ruling on a motion to dismiss. *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025). "To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not suffice." *Id.* (internal quotation marks omitted). We afford pro se materials a liberal construction but do not advocate on a party's behalf. *Childers v. Crow*, 1 F.4th 792, 798 n.3 (10th Cir. 2021).

2

The district court first correctly determined that Holley could not recover money damages from defendants in their official capacities because neither the state nor its officials acting in their official capacities qualify as "persons" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

The district court also correctly determined that Holley's claim for monetary damages against the state and its officials was barred because they were protected by Eleventh Amendment immunity. *See Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013). Although Holley contends Eleventh Amendment immunity only applies to suits brought against the state by citizens of another state, *see* Aplt. Opening Br. at 33, the district court correctly recognized that Eleventh Amendment immunity "extends to suits brought by citizens against their own state," *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021).

As for Holley's claims for prospective relief, the district court explained that *Ex parte Young*, 209 U.S. 123 (1908), provides a jurisdictional exception to Eleventh Amendment immunity for official-capacity claims alleging an ongoing violation of federal law and seeking prospective relief. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). The district court determined, however, that *Ex parte Young* did not apply because Holley failed to name as a defendant the state agency or official charged with enforcing the laws he challenged. The district court reasoned that Holley named the Secretary of State and its current and former office holders as defendants, but he did not name the State Election Board, which administers the state's primaries and general elections. *See* R. at 156-57.

3

But Holley *did* name the State Election Board as a defendant. R. at 81. He also named the supervisor of the State Election Board, Paul Ziriax, *id.*, who allegedly "is responsible for the administration and management of the elections," R. at 85-86. According to Holley, the State Election Board and Ziriax's "primary functions" are to administer "the elections process," "they are the primary cause of [his] constitutional injury," and *Ex parte Young* applies to "stop ongoing violations of federal law." Aplt. Br. at 32. We agree with Holley that *Ex parte Young* provides a jurisdictional path to the merits of his claims for prospective relief.

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md.*, 535 U.S. at 645 (brackets and internal quotation marks omitted). Holley alleged an ongoing violation of federal law by claiming the Oklahoma electoral system violated his rights. *See id.* at 646 ("An *allegation* of an ongoing violation of federal law is ordinarily sufficient[.]" (ellipsis and internal quotation marks omitted)). He also sought prospective relief in asking for a declaratory judgment on the constitutionality of Oklahoma's electoral system and requesting a mandatory injunction to abolish the current electoral system. *See* R. at 90-91. These claims fall under the jurisdictional exception to Eleventh Amendment immunity provided by *Ex parte Young*.

Nonetheless, the jurisdictional inquiry is not determinative of whether the complaint states a plausible claim for relief. *See Muscogee (Creek) Nation v. Pruitt*,

4

669 F.3d 1159, 1167-68 (10th Cir. 2012).  Even if we determine the "district court had subject matter jurisdiction over the claims under the *Ex parte Young* exception," we may still conclude the district court "properly dismissed the complaint for failure to state a claim."  *Id.* at 1168.  And on that score, we agree with the district court that Holley failed to state a constitutional violation.

The district court observed that Holley generally challenged Okla. Stat. tit. 26, §§ 1-102 and 1-103, which establish Oklahoma's primary and primary runoff system.  Holley averred these statutes unconstitutionally exclude candidates from the ballot via the primary process.  In particular, he challenged § 1-102, which states:

> No candidate's name shall be printed upon the General Election ballot unless such candidate shall have been nominated as herein provided, unless otherwise provided by law; provided further that this provision shall not exclude the right of a nonpartisan candidate to have his or her name printed upon the General Election ballots.

Holley suggests these statutory provisions abridge his constitutional rights, but the Supreme Court has held states "may limit each political party to one candidate for each office on the ballot and may insist that intraparty competition be settled before the general election by primary election or by party convention," *Am. Party of Texas v. White*, 415 U.S. 767, 781 (1974).  Indeed, "a [s]tate has a legitimate interest in regulating the number of candidates on the ballot," *Bullock v. Carter*, 405 U.S. 134, 145 (1972), and "[t]here is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot," *Jenness v. Fortson*, 403 U.S. 431, 442 (1971).  These authorities confirm that states may implement ballot-access

5

measures as a permissible exercise of their power to regulate elections. *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 828 (1995).

Holley faults the district court for failing to consider *Thornton*, but he does not explain how that case helps him. *Thornton* distinguished between constitutionally impermissible state-created *qualifications* on eligible candidates for congressional office, *see id.* at 827, and permissible state *ballot-access measures*, which regulate election procedures, *see id.* at 828-29, 835. Without addressing that distinction, Holley asserts in conclusory fashion that the laws in question here are impermissible qualifications on running for federal office. *See* Aplt. Opening Br. at 14. But merely labeling the laws as qualifications is insufficient to withstand the motions to dismiss. *See Brown*, 124 F.4th at 1263. Oklahoma's primary and runoff system do not operate to disqualify candidates who win their nominations, so they do not establish qualifications for federal office. Holley's allegations fail to suggest otherwise, so the district court correctly dismissed the action.[1]

III

Accordingly, the district court's judgment is affirmed.

Entered for the Court

Allison H. Eid
Circuit Judge

---

[1] We need not consider Holley's remaining arguments, which do not address the district court's reasoning. *See Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) ("The first task of an appellant is to explain to us why the district court's decision was wrong.").